UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN LIU and FRIENDS OF JOHN LIU,

                Plaintiffs,

       -against-

THE NEW YORK CITY CAMPAIGN FINANCE
BOARD and THE CITY OF NEW YORK,

                Defendants.

No. 14 Civ. 1687 (RJS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**TABLE OF CONTENTS**

**PAGE NO(s)**:

TABLE OF AUTHORITIES ................................................................................................. ii-vi

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................... 2

ARGUMENT .......................................................................................................................... 3

I.     LEGAL STANDARD ...................................................................................................... 3

II.    PLAINTIFFS' COMPLAINT IS NOT MOOT ................................................................. 4

      A.    THE 2015 AMENDMENTS TO CFB RULE 5-01(F) DO NOT MOOT
            PLAINTIFFS' FACIAL FIRST AMENDMENT CHALLENGE ......................... 4

      B.    DEFENDANTS CANNOT SHOW THAT IT IS ABSOLUTELY
            CLEAR THAT THEIR WRONGFUL BEHAVIOR
            WILL NOT RECUR ............................................................................................ 9

      C.    PLAINTIFFS' RETROSPECTIVE DAMAGES CLAIMS ARE NOT MOOT ... 13

III.   PLAINTIFFS CONTINUE TO POSSESS STANDING .................................................. 15

      A.    PLAINTIFF JOHN LIU HAS STANDING TO PURSUE
            EQUITABLE RELIEF .......................................................................................... 15

      B.    PLAINTIFFS HAVE STANDING TO PURSUE DAMAGES ............................ 16

IV.   THE REVISED CFB RULE VIOLATES THE FIRST AMENDMENT ......................... 17

CONCLUSION ...................................................................................................................... 24

## TABLE OF AUTHORITIES

**PAGE NO(s)**:

### Federal Cases

*Adams v. Bowater Inc.*,
   313 F.3d 611 (1st Cir. 2002) .......................................................................... 13

*Ahrens v. Bowen*,
   852 F.2d 49 (2d Cir. 1988) ............................................................................. 12

*Amidon v. Student Ass'n of SUNY at Albany*,
   508 F.3d 94 (2d Cir. 2007) .................................................................... 7, 17, 23

*Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*,
   131 S. Ct. 2806 (2011) ................................................................................... 18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 3

*Associated Gen. Contractors of Conn., Inc. v. City of New Haven*,
   41 F.3d 62 (2d Cir. 1994) ............................................................................... 12

*Bank of N.Y. v. First Millennium, Inc.*,
   607 F.3d 905 (2d Cir. 2010) ............................................................................. 3

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ........................................................................................... 18

*Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Sch.*,
   457 F.3d 376 (4th Cir. 2006) .......................................................................... 17

*Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*,
   470 F.3d 1062 (4th Cir. 2006) ........................................................................ 17

*City of Lakewood v. Plain Dealer Publ'g Co.*,
   486 U.S. 750 (1988) ............................................................................... 7, 15, 21

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) .................................................................................... 9, 12

*CMR D.N. Corp. v. City of Phila.*,
   703 F.3d 612 (3d Cir. 2013) ........................................................................... 14

*College Standard Magazine v. Student Ass'n of SUNY at Albany*,
   610 F.3d 33 (2d Cir. 2010) ............................................................................. 14

*Diesel v. Town of Lewisboro*,
   232 F.3d 92 (2d Cir. 2000) ............................................................................. 15

*diLeo v. Greenfield,*
  541 F.2d 949 (2d Cir. 1976)...................................................................... 6

*Field Day LLC v. County of Suffolk,*
  463 F.3d 167 (2d Cir. 2006)...................................................................... 22

*Forsyth Cnty. v. Nationalist Movement,*
  505 U.S. 123 (1992)........................................................................... 7, 19, 20

*Freedman v. Maryland,*
  380 U.S. 51 (1965)................................................................................. 16

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000).................................................................................. 9

*Green Party of Connecticut v. Garfield,*
  616 F.3d 213 (2d. Cir. 2010)..................................................................... 18

*Hilton v. Wright,*
  235 F.R.D. 40 (N.D.N.Y. 2006).................................................................. 10

*Irish Lesbian & Gay Org. v. Giuliani,*
   143 F.3d 638 (2d Cir. 1998)................................................................ 13, 15

*Johnson v. Bryson,*
  851 F. Supp. 2d 688 (S.D.N.Y. 2012)......................................................... 12

*Johnson v. United States,*
  135 S. Ct. 2551 (2015)............................................................................. 6

*Knoeffler v. Town of Mamakating,*
  87 F. Supp. 2d 322 (S.D.N.Y. 2000)........................................................... 14

*Lamar Adver. of Penn, LLC v. Town of Orchard Park,*
  356 F.3d 365 (2d Cir. 2004)....................................................... 9, 10, 11, 12

*Liu v. N.Y.C. Campaign Fin. Bd.,*
  No. 14 Civ. 1687, 2015 WL 1514904 (S.D.N.Y. Mar. 31, 2015) ........... passim

*Long Beach Area Peace Network v. City of Long Beach,*
  574 F.3d 1011 (9th Cir. 2009) .................................................................. 23

*Lusk v. Vill. of Cold Spring,*
  475 F.3d 480 (2d Cir. 2007)...................................................................... 22

*MacDonald v. Safir,*
  206 F.3d 183 (2d Cir. 2000)................................................................... 7, 21

*Miller v. City of Cincinnati,*
  622 F.3d 524 (6th Cir. 2010) ............................................................... 14, 16

*Million Youth March, Inc. v. Safir*,
  18 F. Supp. 2d 334 (S.D.N.Y. 1998)..............................................................7

*N.Y. Civil Liberties Union v. Grandeau*,
  305 F. Supp. 2d 327 (S.D.N.Y. 2004)..........................................................12

*N.Y. Pub. Interest Research Grp. v. Whitman*,
  321 F.3d 316 (2d Cir. 2003)........................................................................11

*Nat'l Adver. Co. v. Town of Babylon*,
  900 F.2d 551 (2d Cir. 1990)..........................................................................9

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
  508 U.S. 656 (1993)......................................................................................4

*Nichols v. Vill. of Pelham Manor*,
  974 F. Supp. 243 (S.D.N.Y. 1997)................................................................7

*Nowosad v. English*,
  903 F. Supp. 377 (E.D.N.Y. 1995) ...............................................................4

*O'Connor v. City & Cnty. of Denver*,
  894 F.2d 1210 (10th Cir. 1990) ..................................................................14

*R.C. Bigelow, Inc. v. Unilever N.V.*,
  867 F.2d 102 (2d Cir. 1989)........................................................................12

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
  515 U.S. 819 (1995)....................................................................................17

*Russman v. Bd. of Educ.*,
  260 F.3d 114 (2d Cir. 2001)..........................................................................4

*Shuttlesworth v. City of Birmingham*,
  394 U.S. 147 (1969)................................................................................7, 18

*Southworth v. Bd. of Regents of Univ. of Wis. Sys.*,
  307 F.3d 566 (7th Cir. 2002) ......................................................................17

*Sugarman v. Vill. of Chester*,
  192 F. Supp. 2d 282 (S.D.N.Y. 2002)..........................................................15

*Thomas v. Chicago Park District*,
  534 U.S. 316 (2002)................................................................................22, 23

*Transp. Alts., Inc. v. City of N.Y.*,
  340 F.3d 72 (2d Cir. 2003)..........................................................................23

*United States v. Amato*,
  540 F.3d 153 (2d Cir. 2008)..........................................................................6

iv

*United States v. Concentrated Phosphate Export Ass'n*,
   393 U.S. 199 (1968)..................................................................................................... 9

*Utah Animal Rights Coal. v. Salt Lake City Corp.*,
   371 F.3d 1248 (10th Cir. 2004) ................................................................................. 14

*Van Wie v. Pataki*,
   267 F.3d 109 (2d Cir. 2001)....................................................................................... 13

*Vt. Right to Life Comm., Inc. v. Sorrell*,
   758 F.3d 118 (2d Cir. 2014)....................................................................................... 18

## State Cases

*Badillo v. N.Y.C. Campaign Fin. Bd.*,
   No. 116367/01 (Sup. Ct. N.Y. Cnty., Aug. 30, 2001) ................................................ 21

*Espada 2001 v. N.Y.C. Campaign Fin. Bd.*,
   302 N.Y.S.2d 544, 545 (N.Y. App. Div. 2003) ......................................................... 21

## Statutes and Rules

42 U.S.C. § 1983 ................................................................................................................. 15

CFB Rule 2-02 ........................................................................................................... 8, 19, 20

CFB Rule 3-04 ..................................................................................................................... 21

CFB Rule 5-01(f) ............................................................................................................ passim

CFB Rule 5-05(d) ................................................................................................................ 21

Fed. R. Civ. P. 12 .................................................................................................................. 3

N.Y. City Charter § 1119(2) ............................................................................................... 11

## Other Authorities

13C Charles Alan Wright, et al.,
   Federal Practice and Procedure § 3533.6 (3d ed. 2015) ........................................... 10, 11

Black's Law Dictionary (10th ed. 2014).............................................................................. 7

New York City Campaign Finance Board Video of 8-13-2015 Board Meeting,
   CFB Live Stream, *available at* http://www.nyccfb.info/live............................................ 11

New York City Campaign Finance Board,
   *Statement from CFB Executive Director Amy Loprest on Proposed Rule Changes* (May
   14, 2015), *available at* http://www.nyccfb.info/media/blog/statement-cfb-executive-
   director-amy-loprest-proposed-rule-changes .................................................................. 13

New York City Campaign Finance Board,
   Public Hearing on Proposed Rules (July 13, 2015), *available at*
   http://www.nyccfb.info/media/videos/public-hearing-proposed-rules ............................ 11

## PRELIMINARY STATEMENT

Plaintiffs John Liu and Friends of John Liu ("Plaintiffs") facially challenge the New York City Campaign Finance Act ("Act"), alleging that the Act and the Campaign Finance Board's ("CFB" or "Board") Rules ("Rules") grant the Board unfettered discretion to deny public matching funds to a City candidate—thereby sinking his or her electoral chances—in violation of the Constitution.  As the Complaint describes, the Rules contain numerous expansive provisions that together fail to provide any meaningful limits on the Board's ability to decide, willy-nilly, which campaigns should receive millions of dollars of public funds and which should receive nothing.  Though it dismissed the balance of Plaintiff's claimed constitutional defects, this Court agreed that one provision of CFB Rule 5-01(f) may grant the Board unlawfully unconstrained discretion, and accordingly refused to dismiss Plaintiffs' claim with respect that Rule's "catch-all" introductory text.  After seeking to dismiss Plaintiffs' claims by asserting, among other arguments, that the City's campaign finance scheme implicates no constitutional rights at all, Defendants amended Rule 5-01(f) in the wake of the Court's decision in an effort to moot Plaintiffs' case.

But Plaintiffs' claims are not moot.  The changes are insignificant, and the Rule preserves the unbridled grant of discretion that rendered the prior version of Rule 5-01(f) constitutionally deficient.  In addition, Defendants have failed to show that their unconstitutional conduct will cease, even under the new Rule.  At the very least, Plaintiffs' damages claims remain live, irrespective of the new Rule.

Because the amendments were cursory and non-substantive, the Rule continues to violate the First Amendment, as it still permits the Board to deem a candidate ineligible for public matching funds for virtually any reason the Board chooses.  Specifically, the new Rule permits (but does not require) the Board to render a candidate ineligible for funds if *anyone* associated

with the campaign acted contrary to *any* law at *any* time, as long as, in the judgment of the Board, that person's conduct works to the "detriment" of the campaign finance program.  These nebulous guidelines do not satisfy the First Amendment's requirement that a government official's discretion to regulate political speech be cabined by definite and narrow standards.

For these reasons, Plaintiffs respectfully submit that Defendants' motion for judgment on the pleadings should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Complaint raises two claims.[1]  The first and only First Amendment claim is a facial challenge to the Act and the Rules, alleging that the campaign finance scheme gives government officials unbridled discretion to permit or proscribe political speech, in violation of the First Amendment.  Compl. ¶¶ 195-208.  Plaintiffs' second claim is an Equal Protection claim. It alleges that the CFB singled out Plaintiffs during the 2013 campaign in violation of the Equal Protection Clause.  Compl. ¶¶ 209-216.  Defendants moved to dismiss the Complaint.  ECF No. 27.  On March 31, 2015, the Court issued an opinion granting in part and denying in part Defendants' motion.  While the Court granted the motion with respect to most of the challenged provisions of the Act and Rules, it refused to grant the motion with respect to Rule 5-01(f).  The Court held that the catch-all provision included therein—which explicitly made non-exclusive the Rule's list of ten reasons for which a candidate could be deemed ineligible for funds—could violate the First Amendment's proscription of regulations that give officials unfettered discretion to suppress political speech.

Following this Court's ruling, Defendants informed Plaintiffs that the Board intended to amend Rule 5-01(f).  The parties agreed to stay discovery pending the Board's amendment.  On or about July 13, 2015, the Board published a notice of proposed Rule Amendments, including

---

[1] Plaintiffs' third claim for relief was voluntarily withdrawn.  *See* ECF No. 30.

changes to Rule 5-01(f).  Roberts Decl.[2] Ex. A.  The proposal outlined three changes to the Rule.

*Compare* Lebowitz Decl.[3] Ex. 1 *with* Roberts Decl. Ex. C.  First, it removed the phrase "for

reasons that include, but are not limited to" from the first sentence of the Rule 5-01(f), describing

the conduct that could render a candidate ineligible for funds.  Second, it changed the order of

some of the provisions.  Third, it added an eleventh reason for ineligibility: "there is reason to

believe that the participant or an agent of the participant has engaged in conduct detrimental to

the Program that is in violation of any other applicable law."

The Board adopted the proposed amendments on August 13, 2015, and published a

Notice of Final Rules on the same date.  Roberts Decl. Exs. B & C.  The amended Rule 5-01(f)

became effective on or about September 21, 2015.  Robert Decl. ¶ 7.

## ARGUMENT

### I.    LEGAL STANDARD

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to

Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."  *Bank of N.Y. v. First Millennium,*

*Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Thus, the Court accepts all factual allegations in the

Complaint as true and draws all reasonable inferences in Plaintiffs' favor.  *Id.*  To survive such a

motion, the Complaint need only "contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations

omitted).  At this stage of the proceeding, it is "not the Court's function to weigh the evidence

---

[2] "Roberts Decl." refers to the Declaration of Thomas B. Roberts, dated October 6, 2015, in support of Defendants' motion for judgment on the pleadings, ECF No. 54.

[3] "Lebowitz Decl." refers to the Declaration of David Lebowitz, dated June 13, 2014, included with Plaintiffs' opposition to Defendants' motion to dismiss the Complaint, ECF No. 32.

that might be presented at a trial"; rather "the Court must merely determine whether the complaint itself is legally sufficient." *Nowosad v. English*, 903 F. Supp. 377, 381 (E.D.N.Y. 1995) (internal citations omitted).

## II.    PLAINTIFFS' COMPLAINT IS NOT MOOT

### A.    The 2015 Amendments to CFB Rule 5-01(f) Do Not Moot Plaintiffs' Facial First Amendment Challenge

The touchstone of any mootness inquiry is that "the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ.*, 260 F.3d 114, 118 (2d Cir. 2001). Because they continue to vest the CFB with unbridled discretion to determine eligibility for public financing of electoral campaigns, the 2015 Amendments to Rule 5-01(f) do not render the controversy between the parties hypothetical.

When a governmental defendant claims that changes to a rule or law have mooted a constitutional challenge, the Court must examine the changes to determine whether they are sufficient to nullify the parties' dispute. The Supreme Court has rejected "the proposition that it is only the possibility that the *selfsame* statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). The decisive question is "whether the new ordinance is sufficiently similar to the repealed ordinance that it is permissible to say that the challenged conduct continues." *Id.* at 662 n.3. To answer that question, courts consider whether the "gravamen" of the complaint applies to the new enactment, *i.e.* whether the new provision "disadvantages [the plaintiff] in the same fundamental way" as the prior version. *Id.* at 662.

That is precisely the case here. As detailed *infra* Part IV, the CFB has simply replaced the offending provision of Rule 5-01(f) with an equally unconstitutional (indeed, in some ways,

even more expansive) catch-all provision.  In its prior opinion, the Court denied Defendants'
motion to dismiss Plaintiffs' facial challenge to Rule 5-01(f) to the extent it sought invalidation
of the Rule's introductory language, which provided that the Board could deny matching funds
to a campaign "'for reasons that include, but are not limited to' a list of ten non-exclusive
reasons" enumerated subsequently in the Rule.  *Liu v. N.Y.C. Campaign Fin. Bd.*, No. 14 Civ.
1687, 2015 WL 1514904, at *16 (S.D.N.Y. Mar. 31, 2015).  The Court rejected Defendants'
arguments that the prior version of the Rule contained sufficiently definite and specific criteria to
pass constitutional muster, concluding that Defendants had "fail[ed] to cite any part of the Rule's
text, any binding judicial or administrative construction of the Rule, and any well-established
practice of the CFB that . . . convinces the Court that the catch-all provision in Rule 5-01(f)'s
introduction limits the CFB's power in any way."  *Id.* at 17.  In response, the Board eliminated
the phrase "for reasons that include, but are not limited to" from the introductory text and
replaced it with a new criterion, Rule 5-01(f)(11), which "renders a candidate potentially
ineligible if there is reason to believe that the participating candidate, or that candidate's agent,
has engaged in conduct detrimental to the Program that is in violation of any applicable law not
otherwise referenced in the rule."  Roberts Decl. Ex. B at 2.  This new provision suffers from the
same constitutional infirmities that the Court identified in the prior version.

As an initial matter, the amended Rule still contains a catch-all provision designed "to
specifically foreclose the argument" that the enumerated list limits the scope of the Board's
authority.  *See Liu*, 2015 WL 1514904, at *17.  The Board has described the new Rule as
"clarify[ing] that a 'catch-all provision' *is included*" to allow the CFB to punish conduct "not
described elsewhere in the list."  Roberts Decl. Ex. B at 2 (emphasis added).  The only three
differences between the previous catch-all provision and the new one are that: (1) the new Rule
5-01(f)(11) appears at the end of the enumerated list, rather than the beginning; (2) the new Rule

5-01(f)(11)'s application is nominally limited to "detrimental" conduct; and (3) the new Rule 5-01(f)(11) nominally applies only to conduct "that is in violation of any other applicable law." *See* Roberts Decl. Ex. C, R. 5-01(f)(11).  These changes are precisely the kinds of superficial, meaningless amendments that do not moot a facial challenge under Supreme Court and Second Circuit precedent.

First, the new placement of the provision is irrelevant.  Though obviously inspired by the Court's prior discussion of the doctrine of *ejusdem generis*, *see Liu*, 2015 WL 1514904, at *17, the Board's clever attempt to reposition the catch-all provision does nothing to actually clarify or cabin its authority.  Rule 5-01(f)(11) cannot possibly be "'interpreted to embrace only objects of the same kind or class'" as the enumerated categories of misconduct, *see id.* (quoting *United States v. Amato*, 540 F.3d 153, 160 (2d Cir. 2008)), because there is no such "kind or class" to speak of.

The case cited by the Court in its prior opinion, *diLeo v. Greenfield*, 541 F.2d 949 (2d Cir. 1976), provides an illustrative contrast.  There, the Court of Appeals held that under the *ejusdem generis* rule, a catch-all provision at the end of a Connecticut statute setting forth the permissible bases for termination of a tenured teacher could be saved from constitutional invalidation by reading it as "limited to conduct reflecting on professional teaching capability," as the other enumerated criteria all shared that thematic similarity.  *Id.* at 955.  But here, Rule 5-01(f)(11) follows a veritable grab-bag of desultory criteria, ranging from the commission of intentional fraud to failure to campaign with sufficient gusto.  *See* Roberts Decl. Ex. C, R. 5-01(f)(8), (10).  The enumerated criteria for ineligibility that precede Rule 5-01(f)(11) on the list are therefore of no help to a campaign in predicting what rationale the Board might later interpose to justify a determination of ineligibility for matching funds.  *See Johnson v. United States*, 135 S. Ct. 2551, 2561 (2015) ("The phrase 'shades of red,' standing alone, does not

6

generate confusion or unpredictability; but the phrase 'fire-engine red, light pink, maroon, *navy blue*, or colors that otherwise involve shades of red' assuredly does so." (internal quotation marks omitted)).

The insertion of the "conduct detrimental to the Program" standard is equally vacuous. "Detrimental" means "[c]ausing harm, damages or loss; injurious or hurtful."  Black's Law Dictionary (10th ed. 2014).  A provision that merely limits a licensor's censorial power to prohibiting "detrimental conduct"—that is, doing bad stuff—is no limitation at all.  Just as a public university cannot base speech subsidy decisions on whether the applicant will "complement [its] educational mission," *Amidon v. Student Ass'n of SUNY at Albany*, 508 F.3d 94, 104 (2d Cir. 2007), the Board cannot provide or withhold subsidies based on whether it deems a candidate's actions "detrimental to the Program."  Such criteria are "too vague and pliable to effectively provide the constitutional protection of viewpoint neutrality."  *Id.*  Courts have repeatedly held that analogous standards for permitting or burdening protected speech offend the First Amendment.  *See, e.g.*, *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130-33 (1992) ("public order"); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988) ("necessary and reasonable"); *Shuttlesworth v.  City of Birmingham*, 394 U.S. 147, 150 (1969) ("public welfare, peace, safety, health, decency, good order, morals or convenience"); *MacDonald v. Safir*, 206 F.3d 183, 192 (2d Cir. 2000) ("disorderly in character or tend to disturb the public peace"); *Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 344 (S.D.N.Y. 1998) ("best interest of the community, City or general public"); *Nichols v. Vill. of Pelham Manor*, 974 F. Supp. 243, 250-51 (S.D.N.Y. 1997) ("health, comfort and convenience").  Such capacious standards afford "exactly the sort of discretion that has been found to violate the First Amendment."  *MacDonald*, 206 F.3d at 192.  The First Amendment regards them no differently than an explicitly unlimited catch-all.

Finally, the fact that the wording of the new Rule nominally applies only to conduct "that is in violation of any other applicable law," Roberts Decl. Ex. C., R. 5-01(f)(11), does nothing to limit the Board's unbridled discretion.  According to the Board's interpretation, conduct that violates *any* law in existence "other than the Campaign Finance Act," Def. Br.[4] at 9, may be a basis for an ineligibility determination.[5]  The constitutional infirmity is obvious: Rule 5-01(f)(11) provides no  guidance whatsoever as to *which* violations of *which* laws will be deemed sufficiently "detrimental" to warrant disqualification from the matching funds program, failing to distinguish even between murdering the CFB's chairperson and double parking in Timbuktu. Nor can the rule's text be read to impliedly cover only "severe" or "egregious" conduct; as the Court has already found, "the Rule 2-02 catch-all *already* addresses miscellaneous 'egregious violations' and 'severe abuses,'" and Rule 5-01(f) must accordingly be read to accomplish something more.  *Liu*, 2015 WL 1514904, at *18.  In context, it is clear that the CFB simply attempted to replicate the *carte blanche* provided by the Rule's prior wording while disguising the revision as a substantive limitation.

Rule 5-01(f) previously allowed the CFB to deny a speech subsidy due to any conduct that displeased the Board.  The Rule now allows the CFB to deny a speech subsidy due to any conduct that the Board thinks is bad and not allowed.  That is hardly an improvement, nor even a difference.  To the contrary, it is precisely the kind of *pro forma* regulatory amendment that does not moot a facial challenge.  As the Second Circuit has held, "a plaintiff's claims will not be found moot where the defendant's amendments are merely superficial or the law, after amendment, suffers from similar infirmities as it did at the outset."  *Lamar Adver. of Penn, LLC*

---

[4] "Def. Br." refers to Defendants' memorandum of law in support of their motion for judgment on the pleadings, ECF No. 55.

[5] *Any* violation of *any* provision of the Campaign Finance Act is, of course, already an enumerated basis for a determination of ineligibility.  *See* Roberts Decl. Ex. C, R. 5-01(f)(9).

*v. Town of Orchard Park*, 356 F.3d 365, 378 (2d Cir. 2004).  Rule 5-01(f) is no more

constitutional today than it was a year ago.

> **B.   Defendants Cannot Show That It Is Absolutely Clear That Their Wrongful Behavior Will Not Recur**

Even if the 2015 amendments had corrected the constitutional problem, which they did

not, that would not moot Plaintiffs' facial challenge.  "It is well settled that a defendant's

voluntary cessation of a challenged practice does not deprive a federal court of its power to

determine the legality of the practice.  If it did, the courts would be compelled to leave the

defendant free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks, citation, and alterations

omitted).  A narrow exception to this principle exists where post-filing events have "made it

absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).  However, the

party asserting mootness bears a "heavy burden of persuading the court that the challenged

conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189

(internal quotation marks and alternation omitted).

Defendants rely on what they present as a blanket rule that a First Amendment claim

becomes moot the instant a challenged provision is amended.  No such rule exists.  To the

contrary, the Supreme Court has expressly held that the revision of a municipal ordinance will

not moot a vagueness challenge where "the city's repeal of the objectionable language would not

preclude it from reenacting precisely the same provision" upon obtaining dismissal. *City of*

*Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *accord Nat'l Adver. Co. v. Town of*

*Babylon*, 900 F.2d 551, 554 n.2 (2d Cir. 1990) ("As the Supreme Court has observed, a voluntary

repeal of a constitutionally repugnant law does not necessarily moot challenges to it, because

without a judicial determination of constitutionality the particular governing body remains free to

reinstitute the law at a later date.").

*Lamar*, upon which Defendants rely, is not to the contrary.  There, an advertising company challenged a local ordinance governing billboards as facially unconstitutional under the First Amendment.  *Lamar*, 356 F.3d at 368.  In response to the lawsuit, the town "conceded that its sign ordinance—at least in some respects—was unconstitutional," and therefore "the Town Board met and amended the ordinance" to eliminate or fix those provisions it could not defend in court.  *Id.* at 369-70.  The Second Circuit held that the plaintiff's claims concerning provisions that had been repealed or overhauled were moot, observing that where "the defendant is a government entity, some deference must be accorded to a legislative body's representations that certain conduct has been discontinued."  *Id.* at 376 (internal quotation marks and alterations omitted).

*Lamar* is inapposite here for several reasons.  First, *Lamar* involved *legislative* enactments, not administrative rulemaking.  *See, e.g.*, *id.* at 377 (discussing "deference to the legislative body's decision to amend" a challenged provision).  As courts have held in applying *Lamar*, "the Second Circuit intended this rule to be limited to a *legislative body's* decision to amend a challenged law," and "there is no indication that the Second Circuit intended its holding to be broadly extended to state actors categorically."  *Hilton v. Wright*, 235 F.R.D. 40, 48 n.6 (N.D.N.Y. 2006) (finding rescission of administrative policy within State Department of Correctional Services insufficient to moot constitutional challenge).  There are sensible reasons why a duly enacted legislative repeal may merit the presumption of durability.  *See* 13C Charles Alan Wright, et al., Federal Practice and Procedure § 3533.6 (3d ed. 2015) (noting that when "assessing the probable endurance of an amendment, courts are more likely to trust the acts of a supreme legislative body").  But an administrative rule change—especially one based on a public

hearing that lasted under ten minutes[6] and approved at a meeting for which two of the CFB's five members did not show up[7]—does not conclusively demonstrate that the challenged conduct has been permanently repudiated.  *See id.* ("Amendments of administrative regulations may provide special reasons for avoiding mootness . . .  As compared to statutes . . . courts are more likely to consider carefully the risk that administrators may resume the old ways . . . ."); *see also N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003) (holding that changes in administrative practice were "indicative of a degree of good faith" but nonetheless failed to satisfy the agency's burden to establish mootness).

Moreover, the indicia of permanent voluntary cessation that existed in *Lamar* are absent here.  In *Lamar*, the defendant had conceded that the repealed and amended provisions were constitutionally problematic, 356 F.3d at 369, and had "specifically disclaimed any plans to ever 'change the ordinance back' during oral argument before the district court," *id.* at 377.   While acknowledging "that the amendment or repeal of an allegedly unconstitutional legislative provision will not necessarily moot litigation already underway," the *Lamar* court found "nothing on [the] record" to suggest that the defendant might "return to the questionable state of affairs that existed before [the plaintiff] filed suit."  *Id.* at 377.

This case could not be more different.  Defendants have by no means conceded that the prior version of Rule 5-01(f) was unconstitutional; to the contrary, they defended it vigorously before this Court, advancing the stunning claim that discrepant government subsidization of core political speech "raises little, if any, First Amendment interests."  ECF No. 29 at 12.  It was only

---

[6] *See* New York City Campaign Finance Board, Public Hearing on Proposed Rules (July 13, 2015), *available at* http://www.nyccfb.info/media/videos/public-hearing-proposed-rules.

[7] *See* New York City Campaign Finance Board, Video of 8-13-2015 Board Meeting, CFB Live Stream, *available at* http://www.nyccfb.info/live.  The three members of the Board who were present constituted the bare minimum for a quorum.  *See* N.Y. City Charter § 1119(2) ("A majority of the members of any commission, board or other body shall constitute a quorum of such commission, board or other body.").

after this Court denied the relevant portion of its motion to dismiss that the CFB proposed its rule

change.  "When," as here, "abandonment of challenged conduct seems timed to head off an

adverse determination on the merits," a defendant cannot satisfy its burden to show that a

resumption of challenged conduct is implausible.  *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d

102, 106 (2d Cir. 1989); *see also Lamar*, 356 F.3d at 376 (distinguishing *Aladdin's Castle* on the

ground that there "the defendant city had amended its ordinance numerous times *in response to*

*court rulings*" (emphasis added)).   While dismissal for mootness may be appropriate where it is

clear that a challenged provision has been repealed for reasons other than "to avoid an adverse

judgment," *see Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 41 F.3d 62, 66

(2d Cir. 1994), Defendants cannot obtain automatic dismissal of lawsuits they are losing by

cynically depriving the court of jurisdiction.  To hold otherwise would allow agencies sued for

violating constitutional rights "to conjure up an argument for mootness and thwart adjudication."

*Ahrens v. Bowen*, 852 F.2d 49, 53 (2d Cir. 1988).

Nor has the Board committed, in this litigation or otherwise, to leave the 2015

amendments in place permanently if this case is dismissed.  Where a defendant has "[n]owhere

in the record . . . disavowed any future intention" to resume challenged conduct, a finding of

mootness is especially inapt.  *Bigelow*, 867 F.2d at 106.  Public agencies are no exception.

*Compare, e.g.*, *Johnson v. Bryson*, 851 F. Supp. 2d 688, 701 (S.D.N.Y. 2012) (equitable claims

in employment discrimination suit against United States Census Bureau were not moot where

supporting declarations failed to establish that challenged practices would not be reinstituted in

the future), *and N.Y. Civil Liberties Union v. Grandeau*, 305 F. Supp. 2d 327, 332 (S.D.N.Y.

2004) (declaration from lobbying commission's legal counsel expressing only a "present

intention" to discontinue challenged implementation of disclosure rules, rather than a prospective

disavowal, was insufficient to moot an injunctive First Amendment claim), *with Lamar*, 356 F.3d

at 377 (legislative amendment mooted First Amendment claim where municipal defendant "specifically disclaimed any plans to ever 'change the ordinance back' during oral argument").

The Board's public statements have made clear that its rule change was motivated by a desire to end this litigation rather than a serious grappling with the constitutional limits on its power.  In a May 14, 2015 press release, the Board's executive director described this Court's prior opinion as a vindication of the CFB's position, adding that the Board "[n]evertheless" would revise certain "technical" rules to "provide the clearest possible guidance to participating candidates."[8]  No mention was made of any motivation to avoid constitutional concerns.  Indeed, by the Board's own admission, the change was meant only to "clarify the circumstances under which the CFB may determine that public funds shall not be paid to a participant for an unenumerated reason," ECF No. 41 at 2, not to *eliminate* the catch-all provision the Court identified as constitutionally suspect.  "[W]here a defendant is unwilling to give any assurance that the conduct will not be repeated, a natural suspicion is provoked that recurrence may well be a realistic possibility."  *Adams v. Bowater Inc.*, 313 F.3d 611, 615 (1st Cir. 2002).  That is precisely the case here.

### C.    Plaintiffs' Retrospective Damages Claims Are Not Moot

Finally, even if Plaintiffs' equitable claims were moot, their claims for damages would not be.  It is well established that a live claim for even nominal damages suffices to keep a case from becoming moot.[9]  *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001).  While the Second Circuit has not expressly held that nominal damages are available in a facial First

---

[8] New York City Campaign Finance Board, *Statement from CFB Executive Director Amy Loprest on Proposed Rule Changes* (May 14, 2015), *available at* http://www.nyccfb.info/media/blog/statement-cfb-executive-director-amy-loprest-proposed-rule-changes.

[9] Plaintiffs' general prayer for compensatory damages, *see* Compl., ECF No. 2 at 43, suffices to claim nominal damages.  *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998).

Amendment challenge,[10] other Circuits have done so.  *See, e.g.*, *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010) (rejecting suggestion of mootness in First Amendment facial challenge under unbridled discretion doctrine and holding that "the plaintiffs' claims remain viable to the extent that they seek nominal damages as a remedy for past wrongs," even without proof of actual censorship); *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257-58 (10th Cir. 2004) (noting that a live complaint for nominal damages in a facial First Amendment challenge avoids mootness even "when a functionally identical claim for declaratory relief will not"); *O'Connor v. City & Cnty. of Denver*, 894 F.2d 1210, 1215 (10th Cir. 1990) (claim for nominal damages in unbridled discretion case not mooted by amendment of challenged provisions); *see also CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 625 (3d Cir. 2013) ("We . . . permit damages for facial challenges in the First Amendment context, because First Amendment rights are central to guaranteeing our capacity for democratic self-government." (internal quotation marks omitted)).

Moreover, case law within the Second Circuit strongly suggests that nominal damages are available under the circumstances present here.  While a plaintiff in an unbridled discretion challenge "need not show that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity," *Knoeffler v. Town of Mamakating*, 87 F. Supp. 2d 322, 332 (S.D.N.Y. 2000) (internal quotation marks omitted), that does not preclude an award of nominal

---

[10] In *College Standard Magazine v. Student Ass'n of SUNY at Albany*, 610 F.3d 33 (2d Cir. 2010), the Second Circuit considered a suit alleging that a SUNY-Albany policy for funding of student groups "was facially unconstitutional because it vested in the [Student Association] 'unbridled discretion' to decide how to distribute the funds, thereby presenting an impermissible risk of viewpoint discrimination." *Id.* at 34.  The district court had granted summary judgment to the plaintiffs on their facial challenge, and the plaintiffs had then stipulated to the entry of summary judgment for the defendant on their as-applied challenge, conceding "that they suffered no harm from the denial of funding to their organization under the challenged policy." *Id.*  The Court of Appeals held that the Student Association's appeal of the summary judgment against it on the facial challenge was moot, because the funding policy had been amended such that "the funding policy challenged by the plaintiffs [was] no longer in place at SUNY-Albany." *Id.*  But the Second Circuit did not suggest that the district court had acted improperly in granting a stipulated award of one dollar in nominal damages on the facial challenge, *see id.* at 35, suggesting it saw nothing impermissible about such a remedy even in the absence of harm to the plaintiff.

damages.  "Plaintiffs may recover nominal damages under § 1983 in the absence of proof of

actual injury."  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 108 (2d Cir. 2000) (internal quotation

marks omitted).  Accordingly, the Court's prior determination that "the CFB's actions [in

denying matching funds to Plaintiffs] were reasonable, content-neutral decisions," *Liu*, 2015 WL

1514904, at *9, presents no obstacle to an award of nominal damages here.

Indeed, far from militating against the availability of nominal damages, the fact that an

unbridled discretion claim seeks to protect the rights of third parties not before the Court

demonstrates exactly why nominal damages are an appropriate remedy.  "[A]n award of nominal

damages is singularly appropriate in First Amendment overbreadth cases such as this, for a

successful plaintiff has convinced the court to strike down a law that would, if left standing, chill

the constitutionally protected speech of large numbers of other members of society."  *Sugarman*

*v. Vill. of Chester*, 192 F. Supp. 2d 282, 291 (S.D.N.Y. 2002) (internal quotation marks, citation,

and alterations omitted).  The Second Circuit has expressly held that nominal damages are

available in a First Amendment action "even without proof of any actual injury."  *Irish Lesbian*

*& Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998).  There is no reason that holding

should not extend to the context of a facial challenge.

## III.    PLAINTIFFS CONTINUE TO POSSESS STANDING

### A.    Plaintiff John Liu Has Standing to Pursue Equitable Relief

This Court has already "reject[ed] [Defendants'] argument" that Plaintiff Jon Liu lacks

standing to assert a facial First Amendment challenge to the CFB Rules, "since the Supreme

Court has recognized that the traditional standing requirements are relaxed where, as here, 'a

licensing statute allegedly vests unbridled discretion in a government official over whether to

permit or deny expressive activity.'"  *Liu*, 2015 WL 1514904 at *10 (*quoting City of Lakewood*,

486 U.S. at 755).  Defendants claim that Liu lacks standing because the amended Rule 5-01(f)

15

did not apply to his 2013 campaign and it is "completely speculative" whether he will be subject to the Rule in the future.  Def. Br. at 6.  But this grossly misstates the law.  "In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, *and whether or not he applied for a license.*" *Freedman v. Maryland*, 380 U.S. 51, 56 (1965) (emphasis added); *Liu*, 2015 WL 1514904 at *10 (quoting *Freedman*).  Though Defendants do not mention it, *Freedman* forecloses their argument.  Moreover, although *Freedman* makes it clear that Plaintiff need not run for office again in order to have standing to challenge the Campaign Finance Act, Plaintiff's Complaint specifically pleads that he may run for office in New York City again, which would render him subject to the Act and the Rules.  *See* Compl. ¶ 183.  There can be no question that Plaintiffs have standing to challenge the new Rule.

### B.    Plaintiffs Have Standing to Pursue Damages

As discussed *supra* Part II(C), Plaintiffs also have live retrospective claims for nominal damages.  In an unbridled discretion challenge like this one, the plaintiff's injury-in-fact is the simple fact that his or her "protected-speech activities [were] subject to restriction at the government's unfettered discretion," whether or not that discretion was actually abused.  *Miller*, 622 F.3d at 532.  Moreover, Plaintiffs remain subject to the Board's audit authority,[11] which could apply the prior Rule 5-01 to impose additional penalties on Plaintiffs.  At the very least, then, Plaintiffs' claim for nominal damages as compensation for the violation of their First Amendment rights remains a live issue and is not mooted by the Board's revision of Rule 5-01.

---

[11] As of October 28, 2015, the CFB had not completed a Final Audit for Mr. Liu, nor had it completed an audit for Bill de Blasio, Christine Quinn, or Joe Lhota, the other high-profile candidates for New York City Mayor in 2013. *See* Final Audits and Final Board Determinations, 2013 Citywide Elections, http://www.nyccfb.info/follow-the-money/final-audit-report/2013.

**IV.     THE REVISED CFB RULE VIOLATES THE FIRST AMENDMENT**

As explained *supra,* the CFB's new Rule 5-01(f) amounts to nothing more than a superficial reprise of the original rule that maintains a catch-all provision just as capacious and discretionary as the prior version.  The Rule continues to give the CFB discretion to decide whether to bar all public financing—and thus kill a candidate's campaign—for almost any reason, unconfined by the objective, narrow standards required to render the scheme constitutional.  The new statutory scheme thus suffers from the same constitutional infirmities as the old rule.  It does not pass muster under the First Amendment.

It is uncontested that the First Amendment prohibits government officials from engaging in viewpoint discrimination, regardless of whether the discrimination takes place in a public forum or a private one.  *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 834 (1995) (holding that a public university that subsidized on-campus publications violated the First Amendment by refusing to subsidize religious groups); *see also Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 387 (4th Cir. 2006) ("[E]ven in cases involving nonpublic or limited public forums, a policy . . . that does not provide sufficient criteria to prevent viewpoint discrimination, generally will not survive constitutional scrutiny.").  It is also settled law that a First Amendment challenge to a government body's unbridled discretion directly implicates this bar on viewpoint discrimination.  *See Amidon*, 508 F.3d at 103 (unfettered discretion in funding private speech violates the First Amendment "because it allows officials to suppress viewpoints in surreptitious ways that are difficult to detect"); *Southworth v. Bd. of Regents of Univ. of Wis. Sys.*, 307 F.3d 566, 595 (7th Cir. 2002) ("The requirement of viewpoint neutrality includes a mandate that a decisionmaker not possess unbridled discretion."); *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1068  (4th Cir. 2006)  (a First Amendment challenge to a government body's unfettered discretion is a

"corollary of the prohibition on viewpoint discrimination").[12]  Defendants' assertion that all

issues concerning electoral matching funds are subject to "intermediate scrutiny"—a claim

supported by neither logic nor the cases Defendants cite[13]—is a red herring.  Here, Plaintiffs do

not challenge the sufficiency of the governmental interests at stake.  Indeed, the nature of those

interests is not the relevant question.  Unlike an as-applied First Amendment or Equal Protection

claim that weighs the government's interest with the scope and effect of its regulation, a facial

challenge to an authority's discretion asks a more straightforward question: whether there exist

"narrow, objective, and definite standards to guide the licensing authority."  *Shuttlesworth*, 394

U.S. at 150–51.

　　　With respect to Rule 5-01(f), the clear answer is "no."  It contains no "narrow, objective,

and definite standards to guide the [CFB's] authority" to deny public matching funds and

sentence a political campaign to certain failure.  *See id*.  The deficiencies of the prior rule remain

firmly in place.  The Rule *retains* the CFB's total discretion whether or not to deny public

---

[12] Defendants repeat their bizarre claim from their previous motion to dismiss that "a decision of the CFB to withhold public funding does not limit a candidate's right to speak in support of his or her candidacy" and declare that the Rule is constitutional because it is subject to "lesser" scrutiny.  Def. Br. at 7.  But this Court has already acknowledged the uncontestable point that the CFB's decision whether or not to provide matching funds to a candidate implicates a candidate's First Amendment rights.  *Liu v. N.Y.C. Campaign Fin. Bd.*, No. 14 Civ. 1687, 2015 WL 1514904, at *17 (S.D.N.Y. Mar. 31, 2015).

[13] As they did in their previous briefing, Defendants again rely on *Buckley v. Valeo*, 424 U.S. 1 (1976) and *Green Party of Connecticut v. Garfield*, 616 F.3d 213 (2d. Cir. 2010), to support their assertion that "a denial of matching funds is subject to a lesser—intermediate—level of scrutiny." But those cases described the "exacting scrutiny" to be used in determining whether a financing scheme unfairly or unnecessarily burdens a minor party. Crucially, neither *Buckley* nor *Green Party* involved a public matching funds scheme that gave *any* discretion to government officials in determining whether and at what level to provide matching funds for political campaigns. Rather, both cases examined *mathematical formulas* used to determine whether a political party had sufficient public support to warrant public financing. *Buckley*, 424 U.S. at 87-88; *Green Party*, 616 F.3d at 234.

　　　Moreover, Defendants' blanket assertion that any question about a denial of matching funds is automatically subject to "intermediate scrutiny," Def. Br. at 7, makes no sense. There could be—and have been— many different types of challenges to public financing schemes, alleging equal protection violations (*e.g. Green Party*, 616 F.3d at 224), due process problems (*e.g. Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014)), and First Amendment complaints (*e.g. Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806, 2817 (2011)), all of which trigger different applicable legal standards. Certainly the Supreme Court does not adhere to Defendants' blanket rule, having previously applied strict scrutiny in at least one case challenging a matching funds program on First Amendment grounds. *See Bennett*, 131 S. Ct. at 2817.

matching funds, even if a campaign meets one of the enumerated circumstances rendering it ineligible.  *See* Roberts Decl. Ex C ("The Board *may* determine that public funds shall not be paid" if one of the criteria is met (emphasis added)).[14]  The Rule *retains* the cross-incorporation of Rule 2-02, which itself contains an expressly non-exclusive list of reasons why a campaign could be held "in breach of certification."  Roberts Decl. Ex C, R. 5-01(f)(10).  And the Rule *retains* the nebulous and exceedingly permissive "reason to believe" standard.  Roberts Decl. Ex. C, R. 5-01(f)(9), 5-01(f)(11).  Together, these provisions allow the Board to eviscerate a candidate's campaign and doom his or her changes for election based on nothing more than a passing fancy. *Cf. Forsyth Cnty.*, 505 U.S. at 133 (discretion in charging a fee on speech— including "whether to charge at all"—is unconstitutional where "left to the whim of the administrator").

Not only does the newest provision of the Rule, 5-01(f)(11), not resolve these deficiencies, it violates the First Amendment all on its own.  As explained above, *supra* Part II(A), the provision is explicitly referred to as a "catch-all" by the Board, Robert Decl. Ex. B at 2, and for good reason: It permits the Board to bar *all* public money to a campaign if it suspects that the candidate *or any person* who has *ever* worked for the candidate has *at any time* acted *in any way* contrary to law that could be construed as harmful to the public financing system.[15] Roberts Decl. Ex. C, R. 5-01(f)(11) (Board may deny all matching funds if "there is reason to believe that the participant or an agent of the participant has engaged in conduct detrimental to

---

[14] In fact, the new rule grants the CFB *broader* discretion on this point.  Where the previous rule *required* the CFB to determine whether a campaign should be deemed ineligible for matching funds ("The Board *shall* determine whether public funds shall not be paid"), the new rule makes even that determination discretionary: "The Board *may* determine that public funds shall not be paid."

[15] Notably, the provision permitting the Board to find a candidate ineligible due to fraud limits the conduct at issue to fraud committed "in the course of Program participation."  Roberts Decl. Ex. C, R. 5-01(f)(10).  Subsection 11 contains no such limit in time; presumably, a candidate could be deemed ineligible for an act deemed "detrimental"—an undefined term— that was committed prior to ever participating in the campaign finance program.

the Program that is in violation of any other applicable law.").  Defendants claim that the provision's two requirements—that conduct be "detrimental" and violative of some law other than the Campaign Finance Act—sufficiently cabin the CFB's discretion.  Def. Br. at 10.  But whether taken alone or together, these so-called requirements fail to amount to "narrow, objective, and definite standards" required by the First Amendment.  *Supra* Part II(A).  Just like its previous iteration, "Rule 5-01(f)'s catch-all provision is potentially unconstrained" and thus unconstitutional.  *Liu*, 2015 WL 1514904 at *17.

The catch-all provision also cannot be saved by any binding authority or interpretation that sufficiently limits the discretion authorized by the provision.  *See Forsyth Cnty.*, 505 U.S. at 131.  Defendants cite to "the Board's explanation" of the new rule, Def. Br. at 9, but that explanation is simply a "notice" to the public that amounts to little more than a press release; it is not and does not purport to be binding interpretive authority.  Roberts Decl. Ex. A.  Regardless, the notice provides no actual limitations on the Board's discretion that would render the new catch-all provision constitutional.  Relying on the notice, Defendants insist that the catch-all applies only to "egregious" conduct.  But nowhere does the Rule itself mention "egregious" conduct, and this Court has already ruled that the presence of *another* rule rendering a candidate ineligible for funds based on "egregious" conduct—Rule 2-02—"undermines Defendants' interpretation that the Rule 5-01(f) catch-all pertains only to severe and egregious violations." *Liu*, 2015 WL 1514904 at *18 (internal quotation marks omitted).  That the Board chose *not* to include an "egregious" requirement in the text of the catch-all itself, even after this Court's ruling could have guided the Board's redrafting, strongly suggests that it considers—and will apply—the catch-all to include a far broader category of conduct.

Nor is the Board's discretion confined by the two New York Supreme Court decisions Defendants cite.  Def. Br. at 10.  In *Badillo v. New York City Campaign Finance Board*, No.

20

116367/01 (Sup. Ct. N.Y. Cnty., Aug. 30, 2001), ECF No. 34 Ex. A, the Board held that over

$20,000 a candidate had raised was ineligible for matching funds because the candidate

submitted the associated documentation four days late.  *Badillo*, ECF No. 34 Ex. A at 1.  The

court found that the penalty was specifically "authorized" by the CFB's rules, *id*. at 2, but held

that, "*in these circumstances*," the CFB's penalty was arbitrary as a matter of law, *id*. at 3.  The

decision *never*—contrary to Defendants' characterization—articulated a standard prohibiting the

Board from relying on those same rules to declare a candidate ineligible for matching funds

based on "de minimis violations."[16]  *Id.*; *cf.* Def. Br. at 10.  A determination that a particular

decision *authorized* by the Rules was arbitrary does not amount to a "binding judicial or

administrative construction," *MacDonald*, 206 F.3d at 191, of the Rules themselves sufficient to

limit the Board's authority in future cases.

Defendants' reference to the *Espada* case is equally misleading—and just as unhelpful to

their argument.  Def. Br. at 10 (citing *Espada 2001 v. N.Y.C. Campaign Fin. Bd.*, No. 115778/01

(Sup. Ct. N.Y. Cnty. Sept. 7, 2001), ECF No. 29 Ex. A).  Far from "expressing doubt that

ineligibility could be based upon 'a few limited improprieties,'" as Defendants state, Def. Br. at

10, the *Espada* court explicitly held that the CFB Rules *permitted* the CFB's "harsh, perhaps

'Draconian,' enforcement efforts."  *Espada 2001*, ECF No. 29 Ex. A at 9.  In no way did the

court construe the CFB to lack authority to deem a candidate ineligible for matching funds for

---

[16] In fact, *Badillo* concerned the invalidation of particular matching funds claims, *not* a determination of ineligibility to participate in the program altogether.  *See* ECF No. 34 Ex. A at 2 (applying "Board Rules 3-04 and 5-05(d)," *not* Rule 5-01(f)).  The fact that the candidate in *Badillo* was forced to seek judicial review to reverse the Board's decision proves Plaintiffs' point.  In the context of an overall ineligibility determination, which is in practice an electoral death sentence, judicial review for arbitrariness is constitutionally insufficient.  Judicial review of an adverse CFB decision may not be available in time.  *See, e.g.*, *Espada 2001 v. N.Y.C. Campaign Fin. Bd.*, 302 N.Y.S.2d 544, 545 (N.Y. App. Div. 2003) (holding challenge to pre-election CFB ineligibility decision moot "since the 2001 election has been held and this Court can no longer grant the relief requested").  Even the deprivation of funds during the time needed to obtain such review can change the outcome of an election, rendering any subsequent vindication of First Amendment rights a pyrrhic victory.  That is exactly why courts have repeatedly held that, even if it is "'relatively speedy,'" judicial review "'cannot substitute for concrete standards to guide the decision-maker's discretion'" when First Amendment rights are at stake.  *Liu*, 2015 WL 1514904, at *17 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 771 (1988)).

non-egregious conduct.  The supposedly implicit "egregious" requirement of Rule 5-01(f)(11) is thus not a requirement and no part of the Rule at all.[17]  That a Board staffer drafting a press release decided to include the adjective in a single sentence in a notice to the public represents neither an intention to limit the Board's discretion nor a binding rule doing so.

Defendants' invocation of other cases to justify the Rule's broad discretion—specifically, *Thomas v. Chicago Park District*, 534 U.S. 316 (2002), *Lusk v. Vill. of Cold Spring*, 475 F.3d 480 (2d Cir. 2007), and *Field Day LLC v. County of Suffolk*, 463 F.3d 167 (2d Cir. 2006)—fails that purpose: Those cases do not provide support for the unfettered discretion with which the Rule arms the CFB to disqualify any candidate for unspecified "detrimental" conduct.  Whereas in *Thomas*, the agency could "deny a permit *only* for one or more of the reasons set forth in the ordinance," which were "reasonably specific and objective, and did not leave the decision 'to the whim of the administrator,'" *Thomas*, 534 U.S. at 324 (emphasis added), Rule 5-01(f) allows the CFB to withhold millions of dollars of public funds for *any* action taken by *any* campaign agent at *any* time that violates *any* law and that the CFB believes is "detrimental" to the finance program.  Whereas *Lusk* permitted a village to ban signs from a historical district as an "appropriate means of regulating *non-speech*, aesthetic endeavors," 475 F.3d at 494-95 (emphasis added), the CFB rules regulate the very heart of protected political speech.  And whereas *Field Day* approved of a provision allowing officials to deny park permits that posed a threat to "health and safety," it specifically distinguished those narrow criteria from broader and nebulous factors like "welfare," "decency," "morals," or "convenience and comfort," which impermissibly "invite a public official to consider the content of speech in making permitting decisions." *Field Day*, 463 F.3d at 179.  Defendants put forward no principled constitutional

---

[17] Notably, the purported "egregious" requirement was never mentioned during the Board's session during which it adopted Rule 5-01(f)(11).  *Supra* n.3.

rule that would prohibit restraints on speech based on public "welfare" but authorize a standard that asks whether any past conduct at any unspecified time is "detrimental."  That is no standard at all.

Finally, in relying on *Thomas*, Defendants miss the crucial contextual difference. The discretion that the Court permitted in *Thomas* was limited to a non-mandatory rule allowing an agency to "overlook[]" an applicant's failure to meet "technical requirements" in a park permit application.  534 U.S. at 325.  The rule "provided a generous criterion for forgiving the technical defect and allowing the event to go forward despite the defect."  *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1043 (9th Cir. 2009) (describing *Thomas*).  By contrast, Rule 5-01(f) "authorizes the [CFB] to decide whether to fund" a campaign at all, "and authorizes the [CFB] to make that decision with no governing criteria whatsoever," *see id.*  Such a scheme is "strikingly dissimilar" to the one at issue in *Thomas*.  *Id.* at 1043; *see also Amidon*, 508 F.3d at 104 (invalidating non-exclusive list of factors for student government to consider in making funding decisions as "a nonexclusive set of 'safeguards,' some of which are so indefinite as to be meaningless"); *Transp. Alts., Inc. v. City of N.Y.*, 340 F.3d 72, 75 (2d Cir. 2003) (invalidating City's rules for determining the "special event fees" charged for groups to assemble in public parks, where one factor to be considered was simply "such other information as the [Parks] Commissioner shall deem relevant").  Rule 5-01(f) effectively grants the CFB total discretion, not only in determining whether and how to regulate political speech, but, ultimately, in deciding which political campaigns live and which ones die.  Such a scheme cannot and does not comport with the First Amendment.

**CONCLUSION**

For the reasons stated above, the revision to CFB Rule 5-01 does not moot Plaintiffs'

First Amendment claims, Plaintiffs retain standing to challenge the CFB Rules, and the revised

Rule 5-01(f) violates the First Amendment.  Accordingly, Defendants' motion for judgment on

the pleadings should be denied.


Dated:  November 3, 2015
        New York, New York

                                      EMERY CELLI BRINCKERHOFF
                                      & ABADY LLP


                                      _____/s/_____

                                      Richard D. Emery
                                      Alison Frick
                                      David A. Lebowitz
                                      600 Fifth Avenue, 10th Floor
                                      New York, New York 10020
                                      (212) 763-5000

                                      *Attorneys for Plaintiffs*