UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN LIU, *et al.*,

                              Plaintiffs,

        -v-

THE NEW YORK CITY CAMPAIGN
FINANCE BOARD, *et al.*,

                              Defendants.

No. 14-cv-1687 (RJS)
<u>OPINION & ORDER</u>

<u>RICHARD J. SULLIVAN</u>, District Judge:

        Plaintiffs John Liu, the former Comptroller of the City of New York who ran unsuccessfully for mayor in 2013, and his political fundraising committee, "Friends of John Liu," bring this action pursuant to 42 U.S.C. § 1983 against Defendants the New York City Campaign Finance Board (the "CFB" or the "Board") and the City of New York, alleging violations of the First and Fourteenth Amendments in connection with the Board's denial of matching funds to Liu's 2013 mayoral campaign.  On March 31, 2015, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief could be granted.  (Doc. No. 37 ("MTD Op." or "March 31 Opinion").)  Specifically, the Court dismissed all of Plaintiffs' claims except for their facial challenge under the First Amendment to the catch-all provision in the introduction to CFB Rule 5-01(f).  (*Id.*)  Now before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. No. 53.)  For the reasons set forth below, Defendants' motion is granted.

I. BACKGROUND[1]

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case and offers only a short summary of each for the purposes of this motion. In 1988, the New York City Council enacted the Campaign Finance Act (the "Act" or the "CFA"), which established a program of optional, public "matching" funds for participating candidates running for the offices of Mayor, Comptroller, Public Advocate, Borough President, and City Council. N.Y.C. Admin. Code § 3–701, *et seq.* The CFA's matching funds program (the "Program") is administered by the CFB, an independent, nonpartisan five-person city agency with rulemaking authority, whose members are appointed by the Mayor and Speaker of the New York City Council. *Id.* §§ 3-708(1), (7)(a), (8); N.Y.C. Charter §§ 1051–52, 1057.

CFB Rule 5-01(f) authorizes the Board to disqualify a candidate from receiving public matching funds on a variety of grounds. The previous version of Rule 5-01(f), in effect until September 21, 2015 (Doc. No. 49), also included a catch-all provision in its introduction, which authorized the Board to deny public matching funds "for reasons that include, but are not limited to" a list of ten enumerated bases for disqualification, including "(1) if there is reason to believe that the participant has committed a violation of the Act or these Rules" (*see* MTD Op. 2).

On May 2, 2013, two of Liu's campaign aides were convicted of federal crimes in this Court based on improper fundraising activities in connection with Liu's mayoral campaign. (*Id.* at 3.) Specifically, Liu's campaign treasurer, Jia "Jenny" Hou, was convicted of obstruction of justice, making false statements, and attempted wire fraud, while Liu's fundraiser, Xing Wu "Oliver" Pan, was convicted of conspiracy to commit wire fraud and attempted wire fraud. (*Id.*)

---

[1] The facts of this case are set forth extensively in the March 31 Opinion. (*See* Doc. No. 37.) In ruling on this motion, the Court has considered Defendants' memorandum of law in support of dismissal (Doc. No. 55 ("Mem.")), the declaration of Thomas B. Roberts in support of the motion (Doc. No. 54 ("Def. Decl.")), Plaintiffs' memorandum of law in opposition (Doc. No. 56 ("Opp'n")), and Defendants' reply (Doc. No. 57 ("Reply")).

On August 5, 2013, the CFB rejected the Liu campaign's request for $3.8 million in matching funds and voted to deny future matching funds to the campaign.  (*Id.* at 4.)  Significantly, the Board did not rely on its authority under the catch-all provision in the introduction to Rule 5-01(f) in its decision to deny Liu matching funds.  Rather, the CFB invoked Rules 2-02, 5-01(a)(1), 5-01(f)(1), and 5-01(f)(7), finding that there was "reason to believe that violations of the [CFA] and [CFB rules] have been committed" by Liu's campaign and that the campaign placed "in a major role at least one person who admitted to a plan to violate campaign finance law."  (Compl. ¶¶ 126, 129, 172–73.)  Reverend Joseph Parkes, the Chairman of the CFB, added in his public statement that the CFB's "choice" to deny public funding was based on the campaign's lack of "'a complete and accurate set of records that demonstrates compliance' with the Act and Board rules."  (*Id.* ¶¶ 174–75.)  On September 10, 2013, Liu lost the Democratic Party's mayoral primary, receiving approximately seven percent of the vote.  (*Id.* ¶ 8.)  Even so, Liu remains one of the most prominent politicians in New York City.  He has alleged that he is "committed to public service and may run for elective office in New York City in the future," though he also avers that the "damage to his reputation" stemming from the Board's disqualification decision makes running for office again "far more difficult."  (*Id.* ¶ 183.)

On March 12, 2014, Plaintiffs filed their Complaint in the instant action, alleging First and Fourteenth Amendment violations pursuant to 42 U.S.C. § 1983.  (Doc. No. 2.)  Among other things, Plaintiffs asserted that the Board's disqualification decision was an "unconstitutional prior restraint" in violation of the First Amendment and that Liu was "singled out for . . . adverse treatment" in violation of the Equal Protection Clause of the Fourteenth Amendment.  (*Id.* ¶¶ 202, 212.)  Plaintiffs also alleged that Rule 5-01(f) was facially unconstitutional because it "gives a

government agency substantial power to discriminate against disfavored speakers by suppressing their expression." (*Id.* ¶ 207.)

On March 31, 2015, this Court largely granted Defendants' motion to dismiss the complaint, finding that, in light of the convictions of Hou and Pan and the evidence introduced at their trial, "Plaintiffs have failed to plead facts in support of a plausible 'as-applied' First or Fourteenth Amendment claim based on the CFB's withholding of matching funds." (MTD Op. 10, 23.) However, the Court denied the motion with respect to Plaintiffs' claim that the catch-all provision in Rule 5-01(f)'s introduction, which authorized the Board to deny funding "for reasons that include, but are not limited to" the list of ten enumerated bases of disqualification, was unconstitutionally overbroad on its face. Specifically, the Court found that Defendants "fail[ed] to cite any part of the Rule's text, any binding judicial or administrative construction of the Rule, and any well-established practice of the CFB that, for purposes of a Rule 12(b)(6) motion to dismiss," demonstrated as a matter of law "that the catch-all provision in Rule 5-01(f)'s introduction limits the CFB's power in any way." (*Id.* at Op. 17.)

On April 14, 2015, Defendants filed an answer with respect to the sole remaining claim. (Doc. No. 40.) On April 20, 2015, Defendants represented in a joint letter that the CFB had preliminarily agreed to amend Rule 5-01(f) and that "such an amendment would moot the remaining claim in the case," which was limited to a facial challenge to Rule 5-01(f)'s prior catch-all provision. (Doc. No. 41 at 2.) That same day, the Court issued an order staying discovery pending enactment of the amendment. (Doc. No. 42.) Thereafter, the Court extended the stay in orders dated June 1, 2015, June 5, 2015, June 30, 2015, and August 13, 2015. (Doc. Nos. 44, 46, 48, 50.)

On August 13, 2015, the Board adopted a revised version of Rule 5-01(f), which took effect on September 21, 2015.  (Doc. No. 49.)  Among other things, the new rule replaces the "catch-all" provision addressed in the Court's March 31 Opinion with new "catch-all" language at the end of the Rule that authorizes the Board to deny funding where "there is reason to believe that the participant or an agent of the participant has engaged in conduct detrimental to the Program that is in violation of any other applicable law."  CFB R. 5-01(f)(11).  Following this amendment to the CFB Rules, Defendants moved for judgment on the pleadings on October 6, 2015, arguing that Plaintiffs lacked standing, that their claims were moot, and that the complaint failed to state a claim upon which relief can be granted.  (Doc. No. 53.)  Plaintiffs filed their response on November 3, 2015 (Doc. No. 56), and Defendants submitted their reply on November 24, 2015 (Doc. No. 57). On March 24, 2016, Plaintiffs submitted a letter pointing the Court to new authority regarding mootness (Doc. No. 58), and on May 11, 2016, Plaintiffs submitted a letter regarding CFB's ongoing audit of Plaintiffs (Doc. No. 59), to which Defendants submitted a response on May 13, 2016 (Doc. No. 61).

## II. DISCUSSION

"[J]udgment on the pleadings [under Federal Rule of Civil Procedure 12(c)] is appropriate . . . where, after drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no material issues of fact need to be resolved and that the moving party is entitled to judgment as a matter of law."  *Patel v. Baluchi's Indian Rest.*, No. 08-cv-9985 (RJS), 2009 WL 2358620, at *2 (S.D.N.Y. July 30, 2009) (citing *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 107 (2d Cir. 2008)).

Although the bulk of the parties' submissions focus on mootness, Defendants also argue that Plaintiffs lack standing under Article III of the United States Constitution because Plaintiffs

fail to sufficiently plead an actual or imminent injury. (*Id.* at 5–6.) In their prior motion to dismiss, Defendants argued that Plaintiffs lacked *prudential* standing to bring a facial challenge under the First Amendment – an argument that the Court rejected – but they made no arguments with respect to Article III standing. (*See* Doc. No. 29 at 15–19 (asserting that the liberal prudential standing rules recognized by the Supreme Court in facial overbreadth cases, such as *Freedman v. Maryland*, 380 U.S. 51 (1965) and *City of Lakewood v. Plain Dealer Publ'g. Co.*, 486 U.S. 750 (1988), did not apply).) Defendants now mount a very different attack and argue, for the first time, that Plaintiffs lack *Article III* standing, since they have failed to allege an actual, imminent injury that would be redressable by the injunctive and declaratory relief that they seek. (Mem. 5.) For the reasons set forth below, the Court agrees.

As the Second Circuit has explained, standing has two components: "constitutional standing, a mandate of the case or controversy requirement in Article III [of the United States Constitution], and prudential considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 474 (2d Cir. 2013). A plaintiff must have Article III standing in order for the Court to have subject matter jurisdiction over its claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (describing Article III standing as "the threshold question in every federal case, determining the power of the court to entertain the suit"). It is hornbook law that a plaintiff must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends*

*of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  While the defendant carries a "formidable burden" of demonstrating mootness, the plaintiff has the burden of establishing its Article III standing.  *Id.* at 190.  Where, as here, "standing is challenged on the basis of the pleadings," a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *United States v. Vazquez*, 145 F.3d 74, 81 (2d Cir. 1998) (internal quotation marks omitted), and as the Second Circuit has explained, "standing allegations need not be crafted with precise detail," *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).  Although the standing doctrine evaluates a party's "personal stake as of the outset of the litigation," *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993), a plaintiff must nonetheless demonstrate its standing throughout the litigation, *see In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 102 (2d Cir. 2003) ("Denial of the motion to dismiss on standing grounds does not preclude later consideration on summary judgment or indeed at trial as standing is an aspect of subject matter jurisdiction.").

As the Supreme Court has instructed, "a plaintiff must demonstrate standing separately for each form of relief sought."  *Laidlaw*, 528 U.S. at 185.  "To obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'"  *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)).  In other words, "a plaintiff cannot rely solely on past injuries," but instead "must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought."  *Id.*  Although "imminence is concededly a somewhat elastic concept," a plaintiff's mere declaration of "some day intentions – without any description of concrete plans, or indeed even any specification of *when* the some day will be – do not support a finding of the 'actual or

7

imminent' injury." *Lujan*, 504 U.S. at 564 & n.2 (1992) (internal quotation marks omitted); *see also Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (denying claim for prospective relief predicated on "an accumulation of inferences" that were "simply too speculative and conjectural" to show "sufficient likelihood of future [injury]").

      Two recent cases involving prominent candidates for elected office – one decided by the United States Supreme Court and one by the United States Court of Appeals for the District of Columbia Circuit – are particularly instructive.  In 2003, the Supreme Court considered Kentucky Senator Mitch McConnell's First Amendment challenge to the Bipartisan Campaign Reform Act's provision regulating negative campaign advertisements. *McConnell v. FEC*, 540 U.S. 93, 225–26 (2003), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010). Notwithstanding Senator McConnell's testimony that he had run negative campaign advertisements in the past and planned to do so in future campaigns, the Supreme Court found that McConnell's injury in fact was "too remote temporally" to pursue an injunction against enforcement of the statute, since McConnell would not face re-election for more than four years. *Id.* at 226.  In essence, the Court dismissed McConnell's case because he failed to show that he was "immediately in danger of sustaining some direct injury as a result of the challenged conduct," as required to maintain a suit for prospective relief.  *Id.* (alterations and internal quotation marks omitted).

      Relying partly on *McConnell*, the D.C. Circuit likewise concluded that Ralph Nader lacked standing to bring a suit he initiated against the Federal Election Commission ("FEC") after his unsuccessful 2004 presidential campaign.  *Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013). Specifically, the Court found that Nader did not have "concrete plans to run for office in the future," nor did he show that the FEC's conduct "injured his ability to fight the next election," *id.*

8

at 229, since he merely alleged that he "*may run for office again*," *id.* (emphasis added).  Because the court could award only prospective relief and lacked power to "compensate" Nader for past injuries allegedly suffered during the 2004 election, the court determined that any decision in Nader's favor would "not redress the injuries he claim[ed]."  *Id.* at 228–29.  Therefore, the court concluded that Nader failed to establish Article III standing and dismissed the case.  *Id.*

Here, Plaintiffs principally seek prospective relief – namely, a declaration that Rule 5-01(f) is facially unconstitutional and an injunction preventing Defendants from future enforcement of the rule.  (*See* Compl. at 43.)  Plaintiffs allege that "Liu remains committed to public service and *may run* for elective office in New York City in the future."  (*Id.* ¶ 183 (emphasis added).)  However, Liu's equivocal allegations regarding his future aspirations to run for office, like those made by Nader before the D.C. Circuit, are simply too speculative to establish the sufficient likelihood that Liu will apply to the Board for public financing in the future and expose himself to future injury from enforcement of Rule 5-01(f)(11).

It is true, as Plaintiffs note in their supplemental letter, that the CFB "is actively pursuing civil penalties against Plaintiffs" (Doc. No. 59), and the Second Circuit has recognized standing in a pre-enforcement facial challenge where a party "has an actual and well-founded fear that the law will be enforced against it," *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (internal quotation marks omitted).  But Plaintiffs here have not plausibly alleged that these civil penalties have been, or could be, based on the revised catch-all provision of Rule 5-01(f)(11), which postdated the termination of Liu's 2013 campaign by some two years and concerns eligibility to receive public funds *during* a campaign.  And while plaintiffs in the First Amendment context may establish standing by sufficiently alleging that "the challenged regulation" has deterred them "from engaging in protected activity," *Latino Officers Ass'n v. Safir*, 170 F.3d 167,

170 (2d Cir. 1999) (brackets omitted), Plaintiffs have not alleged that the overbreadth of Rule 5-01(f)(11) has deterred Liu from once again running for office or applying for public financing. Rather, Plaintiffs merely allege that the embarrassment caused by the Board's disqualification decision – which was not premised on the constitutionally suspect catch-all provision – has made "any future political activity" by Liu "far more difficult." (Compl. ¶ 183.) Thus, like McConnell and Nader, Plaintiffs cannot establish standing to pursue prospective relief based merely on the fact that Liu has previously run for office on several occasions. Accordingly, absent a more concrete description of Liu's plans to run for office again and apply to the Board for public financing, Plaintiffs fail to plausibly allege an imminent injury redressable by a declaration or injunction in their favor.

Pointing to the Court's discussion of prudential standing in the March 31 Opinion, Plaintiffs contend that "[i]n the area of freedom of expression . . . one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license." (Opp'n 16 (quoting *Freedman*, 380 U.S. at 56).) In other words, Plaintiffs assert that a plaintiff may bring an overbreadth suit alleging "that although a statute did not violate his or her First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them," *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) (Sotomayor, J.), thus exempting facial challenges from the ordinary prudential rule that litigants may "assert only their own legal rights and interests, and not the legal rights and interests of third parties," *id.* at 494.

But this argument obscures the difference between prudential and Article III standing. Put simply, even when the *prudential* rule against third-party standing does not apply, as in certain

First Amendment contexts, *see, e.g.*, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988),  a plaintiff must still satisfy *Article III's* requirement of injury in fact, *Farrell*, 449 F.3d at 499; *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1061 (2d Cir. 1991).  As the Second Circuit has instructed, "overbreadth doctrine speaks to whose interests a plaintiff suffering Article III injury may represent.  It does not provide a reason to find such injury where none is present or imminently threatened in the first instance."  *Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013).  Thus, the prudential standing exception in overbreadth cases "only allows those who have suffered some cognizable injury, but whose conduct is not protected under the First Amendment, to assert the constitutional rights of others," and therefore, applies in only "a narrow class of First Amendment cases."  *Bordell*, 922 F.2d at 1061; *cf. Am. Booksellers Ass'n, Inc.*, 484 U.S. at 392–93 (recognizing that book sellers had standing to assert adult book buyers' First Amendment rights to allegedly overbroad obscenity statute, based on fact booksellers risked prosecution under the law); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984) (recognizing that professional fundraising firm had standing to assert First Amendment rights of its charitable organization clients in challenging state law imposing limits on charities' fundraising expenses, since enforcement of rule would adversely impact plaintiff's business).  Because Plaintiffs here fail to plausibly allege that they will suffer *any* cognizable future injuries from enforcement of Rule 5-01(f)(11), the prudential exception for overbreadth cases is inapposite.

Plaintiffs also assert claims for damages (Compl. at 43), and the law is clear that a plaintiff lacking standing to pursue prospective relief may of course still have standing to seek damages based on past injuries, *see Lyons*, 461 U.S. at 105.  However, with respect to their facial challenge, Plaintiffs all but concede that they cannot recover compensatory damages, since the Board did not base its disqualification decision on the constitutionally suspect catch-all provision in the

11

introduction to Rule 5-01(f) in 2013, and the Court has already dismissed Plaintiffs' other causes of action.  (*See* Opp'n 16); *see also Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016) ("It is well-settled that absent a showing of causation of the plaintiffs' injuries by the defendants' unconstitutional acts and actual injury, a plaintiff is entitled only to nominal damages." (internal quotation marks and brackets omitted)).  Furthermore, although nominal damages are ordinarily available to Section 1983 plaintiffs – since "the application of unconstitutional procedures constitutes an injury in and of itself, for which nominal damages are appropriate regardless of whether the plaintiff was able to prove an actual injury resulting from the deprivation," *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013) – the constitutionally suspect catch-all provision in Rule 5-01(f) was never applied to Plaintiffs, and therefore "[t]he only arguable harm that [they have] been subjected to is the mere existence" of an allegedly unconstitutional law, *id.*; *see also Ezell v. City of Chicago*, 651 F.3d 684, 698–99 (7th Cir. 2011) (concluding that "[t]he remedy" in a facial challenge "is necessarily directed at the statute itself and *must* be injunctive and declaratory"); *Craft v. Vill. of Lake George N.Y.*, 39 F. Supp. 3d 229, 240 (N.D.N.Y. 2014) (same).  And while the complaint also seeks punitive damages (Compl. at 43), it is by no means clear whether a claim for punitive damages, standing alone, is sufficient to create standing under Article III, and in any event, an award of punitive damages is unavailable against the City and the Board in Section 1983 suits because they are, respectively, a municipality and a municipal agency, *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. 2003).

Accordingly, the Court concludes that Plaintiffs lack standing to pursue an injunction and declaration with respect to their remaining facial challenge and that retrospective relief is unavailable to them.  The Court appreciates that Liu, having run successfully for New York City

Comptroller in 2009 and unsuccessfully for Mayor in 2013, remains a prominent politician in New York City, and the Court finds it highly possible that, in fact, Liu may run again for office. But Article III of the Constitution prevents the Court from premising its jurisdiction on Liu's "some day intentions" to run for office." *See Lujan*, 504 U.S. at 564. Thus, the Court dismisses Plaintiffs' complaint for lack of subject matter jurisdiction, though without prejudice and with leave to replead in the event Plaintiffs are prepared to allege additional facts necessary to establish standing.[2]

### III. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' motion for judgment on the pleadings is granted. Accordingly, Plaintiffs' suit is dismissed without prejudice. The Clerk is respectfully directed to terminate the motion pending at docket number 53 and to close this case. However, IT IS FURTHER ORDERED that Plaintiffs may, within 30 days of the date of this order, petition the Court to restore this matter in order to replead and file an amended complaint that addresses the standing deficiencies set forth in Section II of this opinion and order. SO ORDERED.

Dated:          September 29, 2016
                New York, New York


                                        _____
                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/29/16__

---

[2] Although Defendants also argue that Plaintiffs' case is moot and that the complaint fails to state a claim upon which relief can be granted, the Court does not reach these arguments in light of its holding on the "threshold" issue of standing. *Warth*, 422 U.S. at 498.

13